Date signed May 24, 2013



_____
ROBERT A. GORDON
U. S. BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| In re: | * | |
| Sharon Poulette | * | Case No. 09-30188-RAG |
| | | Chapter 7 |
| Debtor | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION IN SUPPORT OF ORDER OVERRULING TRUSTEE'S OBJECTION TO DEBTOR'S CLAIM OF EXEMPTIONS**

Before the Court is the Trustee's Objection to Debtor's Claim of Exemptions (Objection) (Dkt. No. 58) filed on May 3, 2011. The Debtor's Response to Trustee's Objection to Debtor's Claim of Exemptions (Response) (Dkt. No. 59) was filed on May 31, 2011. An evidentiary hearing was held on July 13, 2011. At the Court's request, the Trustee filed a post-hearing Memorandum in Support of Trustee's Objection to Debtor's Claim of Exemptions (Trustee's Supplemental Memorandum) on July 15, 2011 (Dkt. No. 64). The Debtor's Response to Trustee's Memorandum in Support of Trustee's Objection to Debtor's Claim of Exemptions (Debtor's Supplemental Memorandum) was filed on August 4, 2011 (Dkt. No. 66). The matter is ripe for decision.[1]

---

[1] The Court apologizes to the parties for the time that has elapsed between the filing of the final papers and the issuance of this Order. The reasons for the delay were both serious and beyond the Court's control.

I.  **Preliminary Statement**

The Objection seeks to disallow the Debtor's post-case closing attempt to exempt her originally unscheduled interests in (1) a claim against a contractor, William S. Broaddus, III (Contractor Claim), and (2) a survivor's medical malpractice claim (MedMal Claim) pursued as a result of the death of the Debtor's mother.  The Response asserts that the Debtor did not intend to deceive the Trustee as to either claim and, moreover, that the Debtor told the Trustee about the Contractor Claim at her 11 U.S.C. § 341(a) meeting of creditors (Creditors Meeting).[2]  The Response also asserts that the Debtor was misinformed into believing that the malpractice claim was automatically exempt and, in any event, abandoned by the lawyer hired to prosecute it.  The Court follows the sound legal analysis, if not the result, of Judge Huennekens' opinion in *In re Wilmoth*, 412 B.R. 791 (Bankr. E.D. Va. 2009) and on that basis concludes that the question presented is whether the Debtor can claim excusable neglect as a basis for amendment of her Schedules B and C.  The Court further concludes that the answer is 'yes'.

II.  **Background**

The Debtor filed her Voluntary Petition on October 21, 2009.  She could not afford counsel and filed the case *pro se*.[3]  The Debtor testified as the only witness at the July 13th hearing and her version of events went unchallenged.  The Debtor recounted that her mother suffered from Trigeminal Neuralgia which the Debtor described as a very debilitating disease, presenting severe symptoms.  In early 2007, the Debtor accompanied her mother to a doctor's appointment for what she believed would be a simple procedure of short duration – a glycerol

---

[2] Unless otherwise noted, all statutory citations are to the Bankruptcy Code (Code) found at Title 11 of the United States Code and all rule citations are to the Federal Rules of Bankruptcy Procedure (Rules).

[3] She was assisted by a Bankruptcy Petition Preparer named Bernadette M. Wilbon who she paid two hundred dollars ($200).

injection – that would afford her mother great relief. Instead, however, her mother suffered a stroke and died that day in the emergency room.

The Debtor further testified that in March of 2007, she and her six siblings decided to file a claim against the medical practitioners involved and consulted with an attorney to that end. The attorney indicated that the family's claim was viable and would be filed by May 2007. However, and while her testimony was somewhat unclear on the point, it appears that the first attorney engaged never filed the claim, notwithstanding the family's multiple attempts to contact and motivate him to do so.

The Debtor commenced her bankruptcy proceeding on October 21, 2009. Beforehand, she contacted a "pre-paid legal services" provider (a law firm) and was referred by the firm to a different attorney who the provider claimed had knowledge of bankruptcy.[4] The Debtor testified that she was told by the bankruptcy attorney that the Contractor Claim was not a "viable asset" and did not have to be listed in her Statement of Financial Affairs and Schedules (SOFA and Schedules). She further testified that around the same time, she found an Internet "support," or discussion group regarding bankruptcy and, on that basis, came to understand that her interest in the MedMal Claim was wholly exempt under Maryland law.[5] In that understanding, she was essentially correct. However, she also left with the notion that because it was exempt she did not have to schedule her interest in the MedMal Claim when she filed bankruptcy. Moreover, at that time, over two years after the first attorney's employment, the claim still had not been filed for reasons unknown to the family.

---

[4] The Debtor offered into evidence the referral letter she received from the firm.

[5] The Court came away with the impression that the Internet group was comprised of those who claimed to have filed personal bankruptcy themselves.

3

Neither a transcript nor a recording of the Creditors Meeting was offered into evidence. However, the Debtor testified that she told the Trustee about the existence of the Contractor Claim (then in arbitration) at that time. The Trustee did not dispute the point and instead the Objection acknowledges the Debtor's candor at the Creditors Meeting with respect to the Contractor Claim. The Trustee also stated in the Objection that she did not investigate the Contractor Claim because of the Debtor's indication at that time that it was likely uncollectible.

However, the Debtor did not acknowledge the existence of the MedMal Claim at her Creditors Meeting. According to her testimony, this is so because she was (1) under the mistaken belief that the claim was automatically exempt – that it, "was not included in the bankruptcy and [she] didn't need to worry about it" – and (2) it had not been filed by the attorney. The MedMal Claim was finally filed in the state court on November 3, 2009 by a different attorney than the one first employed. The Debtor testified that she found out about the filing of the claim at some point after the 2009 holiday season. The Debtor received her discharge on January 25, 2010 (Dkt. No. 39) and the Final Decree closing the case was entered the same day.

Approximately six months later, on June 11, 2010, the Trustee filed a Motion to Reopen and to Strike Report of No Distribution (Motion to Reopen) (Dkt. No. 43). The Motion to Reopen averred that the Contractor Claim had been liquidated in the amount of $80,000.[6] Hence the Trustee wanted the case reopened to (a) have her Report of No Distribution (entered on November 23, 2009) stricken, (b) fully investigate the Contractor Claim and (c) "investigate" whether a complaint to revoke the Debtor's discharge should be filed. An Order Reopening Case (Dkt. No. 45) was entered on June 29, 2010. This was followed by a flurry of filings by the

---

[6] The Motion to Reopen did not specify how the Trustee learned of the liquidation of the Contractor Claim. It is also unclear whether the Contractor Claim was liquidated via arbitration award or court judgment.

4

Trustee including applications to employ, a notice of assets and a notice to creditors of the need to file claims.

On March 31, 2011, the Debtor filed Amended Schedules B and C. Amended Schedule B listed the Debtor's interest in both the Contractor Claim ("MHIC Guaranty Fund Claim…$20,000") and the MedMal Claim ("Pending settlement from wrongful death claim…$30,000") (Dkt. No. 53).[7] Amended Schedule C sought to exempt the Debtor's entire interest in the MedMal Claim and $11,000 of the Contractor Claim.[8] The Trustee filed her Objection thereafter and the issue was joined.

### III.     Jurisdiction

This Court has jurisdiction over this proceeding in accordance with 28 U.S.C. §§ 157(a) and 1334 and Local Rule 402 of the United States District Court for the District of Maryland.

### IV.     Analysis

As indicated in Section I above, the Court concludes that the question presented is whether the Debtor can successfully rely upon the doctrine of excusable neglect.[9] To that end, the *Wilmoth* decision has facts that are similar to this case, albeit with crucial differences. In *Wilmoth*, the debtor was injured in an automobile accident fourteen months before he filed his Chapter 7 proceeding. Three months after his bankruptcy filing, and while that case was still open, the debtor filed a personal injury action in the state court to recover for his injuries. Unlike

---

[7] No evidence of either claim was offered into evidence so the Court is unsure as to the exact amounts in controversy. That question does not, however, seem to be relevant to the ultimate decision. The Trustee's Supplemental Memorandum acknowledges that the Debtor has not been able to collect the Contractor Claim.

[8] A second set of amended schedules was filed on April 13, 2011 (Dkt. No. 57) but they do not seem to impact on the question presented.

[9] Debtor's Supplemental Memorandum contends that the Contractor Claim was abandoned by the Trustee when the case was closed and a Report of No Distribution entered by the Trustee. However, per Section 554(c), abandonment upon closure can only occur when the debtor lists the property in question on her schedules. *Wilmoth*, 412 B.R. at 795; *In re Figlio*, 193 B.R. 420, 423 (Bankr. D. N.J. 1996).

the Debtor here, the debtor in *Wilmoth* was represented by counsel and told his attorney about the personal injury claim. The debtor, through his attorney, scheduled medical expenses arising from the accident in his bankruptcy but did not schedule the cause of action itself, either as personal property on his schedule B or as exempt on his schedule C. The debtor attended his Section 341(a) meeting of creditors but did not inform the trustee of the cause of action. Thereafter, the trustee filed a report of no distribution, the debtor received his discharge and the case was closed. *Id.* at 794. The case remained closed for over a year until the debtor filed a motion to reopen. The motion was granted without objection and thereafter, the debtor filed amended schedules B and C to list the cause of action for the first time while simultaneously seeking to exempt it. *Id.* The trustee objected to the debtor's proposed exemption and the ultimate inquiry reduced to whether the debtor could establish excusable neglect as a basis for permitting the exemption of the cause of action. *Id.* at 796-97.

      Rule 4003 sets out the basic guidelines for scheduling, and objecting to, property that a debtor intends to claim as exempt. However, it is Rule 1009(a) that governs a debtor's right to amend her schedules, including schedule C. That Rule provides in pertinent part that, "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed." There is no dispute that this case was previously closed. The Court therefore agrees with Judge Huennekens conclusion that Rule 1009(a)'s plain language terminates a debtor's liberal right to amend exemptions once the case is closed. *Wilmoth*, 412 B.R. at 796.

      The alternate, or post-closing, basis to seek amendment is through the language of Rule 9006(b)(1). That Rule governs whether and under what circumstances an act may be done in bankruptcy after the expiration of the period specified by the Rules. *Id.*; *see also Moretti v*

6

*Bergeron et al. (In re Moretti)*, 260 B.R. 602, 607-08 (1st Cir. B.A.P. 2001) (Rule 1009(a) "specifies no standard for amendment after the case is closed.  The relevant standard is supplied by Rule 9006(b)(1)… ."); *In re Medley*, 29 B.R. 84 (Bankr. M.D. Tenn. 1983).  In relevant part, the Rule provides, "when an act is required or allowed to be done at or within a specified period of time by these rules," the time may still be enlarged after it has expired, "where the failure to act was the result of excusable neglect."

The factors for determining excusable neglect were established by the Supreme Court in *Pioneer Inv. Servs. Co. v Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 113 S. Ct. 1489 (1993). The Petitioner (the non-moving party below) argued that 'neglect' should be interpreted to include only those circumstances that are beyond a party's reasonable control.  The Court disagreed and determined that the word should be given its ordinary meaning with the result that it would encompass inaction caused by "inadvertence, mistake, or carelessness," in addition to "intervening circumstances beyond the party's control."  507 U.S. at 388; *accord Resolution Trust Corp. v. SPR Corp. (In re SPR Corp.)*, 45 F.3d 70, 72 (4th Cir. 1995) (quoted in *Sikes v. Swann (In re Swann)*, No. 05-01468, slip op. at 6, 2007 Bankr. LEXIS 2077 (Bankr. D. Md. June 12, 2007)).

The Court further held that the accompanying analysis as to what is excusable (or not) must be equity based and should examine, "all relevant circumstances surrounding the omission." *Pioneer*, 507 U.S. at 395.  The relevant factors include, "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within reasonable control of the movant, and whether the movant acted in good faith."[10]  *Id.* at 388.

---

[10] The Court did not indicate whether more or less weight should be given to any one factor.

In this case, there is no question, and the Court so finds, that the Debtor's failure to list the Contractor and MedMal Claims was borne of neglect: there is no evidence that she purposefully failed to list the claims and the trustee does not contend that to be the case. In short, both her demeanor and the evidence are convincing that she simply misunderstood and made a mistake when she failed to schedule the two claims. Hence, the question becomes whether her neglect is excusable. On the facts presented, the Court finds that it is.

Ms. Poulette, proceeding without a lawyer, attempted to secure what she perceived to be legitimate advice before filing bankruptcy. She discussed her case with someone held out to her as a bankruptcy expert and he told her that the Contractor Claim was not 'viable' and therefore did not need to be scheduled. In that vein, she testified that at the time it was her understanding that a "claim" meant "an asset available to pay a debt," which the Contractor Claim was not. But even with that understanding, she did tell the Trustee about the Contractor Claim at her Creditors Meeting when questioned and thus the Trustee was in no lesser position to gather information regarding the same. At that moment, the Trustee could have (1) directed the Debtor to amend her Schedule B, (2) instructed her to provide further information, (3) taken action on her own to secure "possession and management" of the Contractor Claim, or (4) done all three. Accordingly, the Court finds that the Debtor was acting in good faith and that the reasons behind her actions were justified under the circumstances. Moreover, as the Debtor told the Trustee about the Contractor Claim, the Court cannot find any prejudice to the estate. To the contrary, it does not appear from the record that the claim has been collected, and if it has been, it appears that the Debtor only seeks to exempt a portion of it. To the extent there is any value to the Estate, the Trustee has long been in a position to pursue the Contractor Claim and satisfy that end. This circumstance does not appear to vary differently from what would have occurred had

the Contractor Claim been properly scheduled. Hence the Court finds that the length of time that has passed is not a relevant inquiry under the facts presented.

The MedMal Claim was not revealed by the Debtor at the Creditors Meeting and her failure to do so makes her case on this front a bit less appealing. However, the overall context convinces the Court that the same result should obtain. In short, the Court believes her testimony and finds that the Debtor was under the justifiable mis-impression that the MedMal Claim (related to her mother's injury) had been abandoned by the lawyer in light of the significant passage of time. Nevertheless, she raised the issue with the Internet discussion group and apparently got a correct answer to the question of whether her interest in the claim was exempt. Her conclusion that it therefore need not be scheduled was wrong. But I find that that the equities still fall in her favor under the *Pioneer* standard. This is so mainly because, (1) the MedMal Claim is exempt and thus the estate has not been prejudiced by the Debtor's error and (2) the Debtor relied in good faith on the information she received as a part of her attempted pre-bankruptcy planning. The Trustee offered no evidence of any prejudice, nor did she dispute the Debtor's version of events. Furthermore, while the delay between the closing of the case the Debtor's scheduling of the MedMal Claim – approximately 13 months – was lengthy, the Court does not find it to be unreasonable, particularly in light of the lack of prejudice.

And these factors also distinguish this case from *Wilmoth*. In *Wilmoth* it was the debtor who personally suffered the injuries and who had complete ownership and control of the claim. Although he listed related medical expenses, he did not list the cause of action. Moreover, the claim arose immediately before the bankruptcy filing and the debtor filed the cause of action soon after filing bankruptcy. And finally, he was represented by counsel and told his attorney about the claim. 412 B.R. at 794, 799.

Accordingly, the Court finds that while the result in *Wilmoth* was proper and entirely justified by the facts presented to Judge Huennekens, the allowance of the amendments and the exemptions in this case are equally justified by the circumstances presented herein.

## V.     Conclusion

In conclusion, the Objection shall be overruled.

**End of Opinion**